[Civ. No. 12320. Second Appellate District, Division Two.—November 6, 1939.]

GEORGE PETERSON, Appellant, v. WOLFER PRINTING CO. (a Corporation), Respondent.

Raphael Dechter and Harry A. Pines for Appellant.

Daily & Gallaudet for Respondent.

WOOD, J.—Plaintiff commenced this action to recover from defendant corporation the sum of $3,400 alleged to be due him for services rendered. Four causes of action are set forth in the complaint, each based upon a common count. Findings and judgment were in favor of defendant and plaintiff prosecutes this appeal from the judgment.

Defendant corporation was in March, 1934, engaged in the printing business and plaintiff was manager of the engraving department. W. Rankin Good and H. H. Porter each owned one-half of the corporate stock, Mr. Good being president of the corporation. On March 28, 1934, Good and Porter entered into an agreement whereby Good agreed to buy Porter's stock, which Porter agreed to sell. At about the same time plaintiff received a letter dated March 27, 1934, signed by Wm. Rankin Good, as follows: "George Peterson Los Angeles, California Dear Sir: This corporation considers you a valuable and faithful employee and trust that you will in the future, as in the past, continue to well and faithfully serve us in your present capacity. This corporation has entered into an agreement whereby it expects to acquire certain capital stock of the Wolfer Printing Company at the end of approximately 67 months from the present time. If it is able

to acquire that stock, it will at the end of 67 months deliver to you 50 shares of stock as a gift for your valued services. Yours truly, W. Rankin Good.''

Good entered into an agreement with the corporation on April 28, 1934, by which he agreed to transfer to the corporation 150 shares of the stock which he was to receive from Porter under their agreement, to which agreement reference was made. The agreement of April 28th indicates that the 150 shares of stock were to be transferred to the corporation in order to enable the·corporation to carry out a bonus plan which, the agreement recites, had been established. In July, 1936, Good acquired all of the stock which had been owned by Porter, but it does not appear whether any of this stock was ever transferred to the corporation. In July, 1937, plaintiff voluntarily terminated his employment with the corporation and in August, 1937, filed the present action. Between April, 1934, and September, 1937, periodical entries were made in defendant's account books showing monthly bonus credits to plaintiff's account. These entries were based upon the original journal entry which was: ''To credit employee with bonus from April 1, 1934, to December 31, 1934, per agreement on file, being 9/67ths of $6,000.00 and of $12,-000.00 respectively.'' These entries were made for the purpose of complying with various tax requirements.

The present action was not brought for the purpose of recovering the stock bonus provided for in the agreement of March 27, 1934, nor is it an action to recover damages for an alleged breach of that agreement. On the contrary, plaintiff seeks to recover upon one or more common counts based upon an alleged subsequent oral agreement to pay a cash bonus instead of a stock bonus, or upon the entries in defendant's account books, which, he contends, show that the amount sued for had been credited to plaintiff's account.

The trial court found that the various allegations which form the basis of the various common counts are not true and specifically found ''that on or about April 1, 1934, defendant promised and agreed to give to plaintiff on November 1, 1939, a bonus of stock and not of money upon condition that plaintiff continued in the employ of defendant and rendered faithful services for the defendant at all times between on or about said April 1, 1934 and November 1, 1939''. ■ Plaintiff's contention that this finding is not supported by the evidence

cannot be sustained. He bases his contention mainly upon his own testimony in which he stated that he had requested a salary increase in the presence of the general manager of the corporation and was informed by the vice-president, W. Rankin Good, Jr., that he could not have an increase in salary because of the bonus arrangement which itself represented a substantial increase. Plaintiff thereupon said that he had expected a stock bonus and knew nothing of a cash bonus, and the vice-president said, according to plaintiff's testimony, that the corporation had no intention of giving him a stock bonus but intended to give him a cash bonus and that they would be willing to arrange semimonthly payments of some kind. Plaintiff then said that such arrangements would be satisfactory with him provided it was presented in proper form. A few days later a written form of a proposed employment agreement was presented to plaintiff, which provided for a cash bonus to be paid to plaintiff in monthly instalments if plaintiff remained in the employ of the corporation for two and one-half years from June 1, 1937. Plaintiff refused to sign this agreement.

In his testimony the vice-president denied that he had ever stated that the corporation would not give to plaintiff a stock bonus. The general manager of the corporation testified that at the conference which followed plaintiff's request for an increase the vice-president told plaintiff that he could not have an increase because of the bonus arrangement; that at that time plaintiff stated that he was building a house and needed the money and would like to have his bonus money; that the vice-president replied that some arrangement might be made and that the corporation had never intended to pay the bonus in stock but intended to pay it off in cash. Leaving out of consideration the question concerning the authority of the vice-president to bind the corporation in the matter and also leaving out of consideration the vice-president's testimony in which he denied that he had stated that the corporation did not intend to give the plaintiff a stock bonus, it must nevertheless be held that the evidence is sufficient to sustain the trial court's finding that no oral agreement to pay a cash bonus was ever made. The trial court was justified in concluding that the parties were willing to discuss the matter of a cash bonus in order to reach an agreement but that in fact no definite or final agreement was reached. It appears

without conflict that the proposed cash bonus was to be arranged and presented to plaintiff in suitable form. The written form of employment contract, embodying a cash bonus arrangement, which was presented to appellant is further evidence of the fact that the definite arrangements as to the cash bonus had not been agreed upon orally and that it was the intention of the parties that such arrangements were to be embodied in a written contract in a manner agreeable to both parties. Since this contract was never executed by the parties no agreement concerning a cash bonus was ever consummated.

■ The evidence is also sufficient to sustain the trial court's finding that defendant did not become indebted to plaintiff on an open book account. It is important to note that the original journal entry crediting plaintiff's bonus account specifically referred to an agreement on file. The only bonus agreement on file was the agreement of March 27, 1934, which provided for a stock bonus at the end of 67 months. The expert accountant who set up the account testified that such entries were made periodically in order to comply with tax requirements. Since plaintiff has failed to state a cause of action based upon a stock bonus agreement, he cannot recover upon an open book account which contains nothing more than entries based upon such agreement.

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 24, 1939.